IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOSEPH STANLEY SKUPIEN, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | No. 3:17-CV-506-D (BT) |
| | § | |
| LORIE DAVIS, *Director*, TDCJ-CID | § | |
| Respondent. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Petitioner Joseph Skupien, a Texas prisoner, filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254. The District Court referred this resulting cause of action to the United States magistrate judge for pretrial management, pursuant to 28 U.S.C. § 636(b) and Special Order 3-251. For the following reasons, the petition should be denied.

I.

On June 25, 2013, a state trial court adjudicated Petitioner guilty of the offense of burglary of a habitation, enhanced, and sentenced him to fifteen years in prison. *State of Texas v. Joseph Stanley Skupien*, No. F-12-41699-L (Crim. Dist. Ct. No. 5, Dallas County, Tex., Jun. 25, 2013).

On July 31, 2014, the Fifth District Court of Appeals affirmed Petitioner's conviction and sentence. *Skupien v. State*, No. 05-13-00903-CR, 2014 WL 3778910 (Tex. App. – Dallas, 2014, no pet). Petitioner did not file a petition for discretionary review.

1

On July 20, 2015, Petitioner filed a state petition for writ of habeas corpus. *Ex parte Skupien*, No. 84,589-01. On March 1, 2017, the Court of Criminal Appeals denied the petition without written order on the findings of the trial court without a hearing.

On February 14, 2017, Petitioner filed the instant § 2254 petition. In several grounds for relief, Petitioner argues:

1. There was no evidence that he committed or intended to commit theft as required to convict him of burglary;

2. He received ineffective assistance of trial counsel when counsel:

    (a) failed  to adequately advise him, which caused him to reject a ten-year plea offer;

    (b) failed to file a motion to quash the indictment;

    (c) waived his right to jury trial without advising Petitioner of the disadvantages;

    (d) failed to call an expert witness to testify about Petitioner's sanity and competency; and

    (e) failed to raise his competency or insanity as a defense;

3. He received ineffective assistance of appellate counsel when counsel failed to raise his ineffective assistance of trial counsel claims on direct appeal.

On June 15, 2017, Respondent filed her answer. Petitioner did not file a reply.

II.

The following description of the evidence supporting Petitioner's

conviction is taken from the factual background section of the appellate court's

decision.

> Barbara Ayo, a neighbor of the 89–year–old
> complainant Lillie Morrin, testified she had awakened
> at approximately 6:00 a.m. on September 30, 2012. She
> looked through the blinds on her back window and saw
> a flashlight shining on the glass panels of Morrin's
> garage. Ayo knew Morrin was out of town, and she
> immediately called 911. Ayo saw an individual, whom
> she later recognized as appellant, walk to a truck that
> was parked in Morrin's carport and then to the side of
> Morrin's home. Ayo identified appellant to the 911
> operator. Appellant was pointing his flashlight into a
> side window and walked down the alley with his
> flashlight facing downward "like he was looking for
> something."  Appellant then returned to Morrin's home
> and entered a gate onto the backyard patio. Ayo did not
> see appellant enter the house or carrying anything from
> the property. She heard the police shout, "Come out
> with your hands up."
>
> Lillie Morrin testified she had visited appellant's parents
> to let them know she was leaving town for an extended
> period of time to visit her sister in California. Morrin
> testified that appellant lived in an RV in his parents'
> backyard. Morrin testified that appellant may have been
> around when she told his parents she was leaving town
> because he was "in and out."  Morrin testified, however,
> that she did not ask him to look after her home or
> provide him with a key. Morrin did not give appellant
> permission to be in her home or pick up her mail, nor
> did appellant ever mention picking up Morrin's mail for
> her. Morrin testified that she had moved to Mesquite
> from Galveston and had not fully unpacked. When she
> checked her belongings, the only thing she discovered
> missing was a record player. She agreed her home was
> not disturbed or ransacked, nor had anyone gone

through her drawers. Morrin testified that in the past appellant had given her things for her home, he sold her a wooden recliner for $10.00 and a small table for $2.00 that she had on her patio.

Manuel Morrin testified he is Morrin's brother. He was to watch over Morrin's house while she was out-of-town, as he had done during the preceding three years. Manuel went to Morrin's house almost every day, checked the house, and picked up her mail because she received a lot of magazines. Morrin had someone who mowed the lawn for her. Manuel testified that after he was notified that the police had been to Morrin's house, he went by the house. He found a bathroom window open all the way and a pink stepladder leaning against the brick wall. On his previous visits to the house, no windows were open.

Mesquite police officers Hatsady Thongsavat and Crabtree responded to the 911 call to Morrin's house. Thongsavat testified that the officers parked their patrol units about two houses away and approached Morrin's house on foot from the front. They walked towards the back, shining their flashlights into the windows as they passed. When they reached the back of the house, they found appellant holding a flashlight and exiting through the sliding glass door. They also saw a ladder under an open bathroom window. Appellant told the officers he was watching over Morrin's house for her and he was simply investigating the open windows he had observed. The officers took appellant into custody and "swept" Morrin's house.  They did not find anyone else inside nor did they find the house to be in disarray but they did note that two other windows were also open.

Mesquite police sergeant Wes Talley ascertained that appellant was not authorized to be in Morrin's house, and the officers arrested appellant. Talley also testified that he received a letter from appellant. The letter, which was admitted as State's Exhibit no. 8, was addressed to Talley, Thongsavat, and Crabtree. In the letter, appellant claimed to be a "part time resident" at Morrin's home. In the letter, appellant also stated he did

4

not call the police because he wanted to investigate the matter himself in case he was "just being delusional."

Appellant testified that Morrin approached him and his parents while they were in their garage and told them about her trip. Appellant said he jokingly asked Morrin if she wanted him to care for her lawn. Morrin replied, "No. Just keep an eye on my house for me." Appellant testified that he gave, not sold, Morrin things such as furniture because she was a "broke old woman" whom he loved even though he had only known her about a year. Appellant testified that on the night he entered the house, he had intermittently smoked methamphetamine from about 2:00 a.m. to 6:00 a.m. He intended to do laundry after his father awoke, which was between 6:00 a.m. and 6:30 a.m. He retrieved his clothes from the trunk of his car and put them on the trunk and the fence of his parents' house. He then went to urinate in his parents' yard and, while doing so, he became suspicious when he noticed an open window on Morrin's house. He retrieved a flashlight from his truck and flashed the light in Morrin's garage windows. He saw boxes he did not believe had been there recently. Appellant then went to the side of the house and, after noticing open windows, began to beat on the windows and said, "You better come out or I'm gonna call the police." Appellant testified he thought he had seen a person or a light inside the home. He went to the front door and began to ring the doorbell. He noticed the mail box, which was on the front porch, was full. Fearing this would signal an unoccupied home, he took Morrin's mail, intending to give it to her, and he set it on the trunk of his vehicle. Appellant testified he tried to call his father and Morrin's home phone, but did not get an answer. He debated about whether to call police, but hesitated due to his history with law enforcement and fear of going to jail. So, he stopped to smoke a cigarette.

Appellant saw a light go on in the home of the neighbor on the opposite side of Morrin's yard, and he saw her standing by a window talking on the telephone. Appellant thought, "Okay. I have a witness." He waved at the neighbor, climbed a ladder he had positioned by

5

the bathroom window, and eased himself through the window onto the bathroom counter. Appellant walked through the house, but found no one. When he saw a flashlight, he knew the police had arrived and approached them to explain he went in the house because Morrin had left her windows open and he believed he had seen someone inside. Appellant testified he had no knowledge of the record player Morrin said was missing. During cross-examination of appellant, the State introduced into evidence State's Exhibit no. 9, a letter appellant had written to his father. In the letter appellant asked his father to fill out a change of address card in appellant's name at the post office to reflect Morrin's address and backdate it to before "Sept. 12" so that when appellant went to trial, he would have received mail at Morrin's address.

Marquita Fitzgerald testified in rebuttal that she is the neighbor who lives on the opposite side of Morrin's house. Fitzgerald denied that appellant waved to her on the morning of the burglary and had no knowledge he went into the house.

*Skupien*, 2014 WL 3778910 * 1-3.

III.

**1.    Standard of Review**

The pertinent terms of the Antiterrorism and Effective Death Penalty Act of

1996 (the "AEDPA"), 28 U.S.C. § 2254 provide:

(d)    An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

6

>    (2)    resulted in a decision that was based on an
>    unreasonable determination of the facts in light of the
>    evidence presented in a State court proceeding.

*See* 28 U.S.C. § 2254(d). Under the "contrary to" clause, a federal habeas court may grant the writ of habeas corpus if the state court arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law or if the state court decides a case differently from the United States Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 413 (2000). Under the "unreasonable application" clause, a federal court may grant a writ of habeas corpus if the state court identifies the correct governing legal principle from the United States Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *Id.*

## 2.    Insufficient Evidence

Petitioner first argues the evidence was insufficient to support his conviction. Respondent contends this claim is procedurally barred. Although Petitioner raised this claim on direct appeal, and on state habeas review, he failed to raise the claim in a petition for discretionary review. A claim of insufficiency of the evidence is not cognizable on state habeas review and must be presented to the Court of Criminal Appeals by filing a petition for discretionary review. *See Satterwhite v. Lynaugh*, 886 F.2d 90, 92 (5th Cir. 1989); *West v. Johnson*, 92 F.3d 1385, 1398 n.18 (5th Cir. 1996). The state habeas court therefore found the claim procedurally barred. (ECF No. 16-10 at 8.)

Federal courts may not review a state court decision that rests on an adequate and independent state procedural default, unless the habeas petitioner shows cause for the default and "prejudice attributable thereto" or demonstrates that the failure to consider the federal claim will result in a "fundamental miscarriage of justice." *Harris v. Reed*, 489 U.S. 255, 262 (1989). When the last state court to review a claim clearly and expressly states that its judgment rests on a procedural bar, the procedural default doctrine generally bars federal review. *Id*; *Lowe v. Scott*, 48 F.3d 873, 875 (5th Cir. 1995). Here, Petitioner has shown no cause for his failure to present his claim challenging the sufficiency of the evidence to the Texas Court of Criminal Appeals.

Petitioner also has failed to demonstrate the need to prevent a miscarriage of justice. This exception is "confined to cases of actual innocence, 'where the petitioner shows, as a factual matter, that he did not commit the crime of conviction.'" *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999) (quoting *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir. 1995)). To establish the required probability that he was actually innocent, a petitioner must support his allegations with new, reliable evidence that was not presented at trial and must show it was more likely than not that no reasonable juror would have convicted him in light of the new evidence. *Id.* (citing *Schlup*, 513 U.S. at 327). Petitioner has presented no new, reliable evidence showing that it was more likely than not that no reasonable juror would have convicted him. Petitioner has not overcome

8

the state procedural bar. Accordingly, the procedural default doctrine bars federal habeas relief on these claims.

### 3.    Ineffective Assistance of Counsel

Petitioner also claims he received ineffective assistance of counsel. To sustain a claim of ineffective assistance of counsel, Petitioner must show that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense so gravely as to deprive Petitioner of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Court stated that "[j]udicial scrutiny of counsel's performance must be highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. Courts, therefore, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

Even if counsel is proven deficient, a petitioner must prove prejudice. To prove prejudice, Petitioner must show "a reasonable probability that the result of the proceedings would have been different but for counsel's unprofessional errors." *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 694). "[T]he mere possibility of a different outcome is not sufficient to prevail on the prejudice prong." *Id.* "Rather, the defendant must demonstrate that the prejudice rendered sentencing 'fundamentally unfair or unreliable.'" *Id.* (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)).

### A.   Plea Offer

Petitioner argues his counsel inadequately advised him about the law and facts, which caused him to reject a ten-year plea offer. On state habeas review, defense counsel submitted an affidavit stating that he "fully advised [Petitioner] as to the nature of the charges against him" and "any possible defensive issues." (ECF No. 16-10 at 15.) Petitioner does not explain what additional or different advice his counsel should have provided. Petitioner has thus failed to show that the state court's denial of this claim was unreasonable.

### B.   Motion to Quash

Petitioner argues his counsel was ineffective because counsel failed to file a motion to quash the indictment, arguing the indictment failed to provide adequate notice of the specific manner of burglary.

The indictment alleged that Petitioner committed burglary by: (1) entering the habitation without the owner's consent with the intent to commit theft; and (2) entering the habitation without the owner's consent and that Petitioner committed or attempted to commit theft. (ECF No. 16-2 at 17.)  Under Texas law, an indictment may state alternative ways of committing an offense. *See Kitchens v. State*, 823 S.W.2d 256, 258 (Tex. Crim. App. 1996) (en banc). Plaintiff has therefore failed to show his counsel was ineffective for failing to file a motion to quash.

### C.    Waive Jury Trial

Petitioner claims his counsel persuaded him to waive a trial by jury without

informing him of the possible disadvantages. On state habeas review, defense

counsel submitted an affidavit stating:

> Mr. Skupien was. . . consulted fully about his right to a
> jury trial. Mr. Skupien has a lengthy criminal record
> involving various thefts, at least one prior burglary of a
> habitation, and a firearms violation. He was acutely
> aware of the criminal system and how it worked. He
> chose to take his chances with a trial before the court. I
> fully advised him of the consequences.

(ECF No. 16-10 at 15.)  Petitioner has failed to show that the state court's denial

of this claim was unreasonable.

### D.    Expert Witness and Competency

Petitioner claims his counsel was ineffective when counsel failed to request

a competency exam or hire an expert witness to testify regarding his competency.

Petitioner states he had mental problems and was not able to consult with his

attorney during trial, and that he might not have been sane or competent at the

time of the offense because he was high on methamphetamine.

Petitioner has submitted no evidence that an expert witness would have

testified favorably for the defense. S*ee Martin v. McCotter*, 796 F.2d 813, 819

(5th Cir. 1986) ("hypothetical or theoretical testimony will not justify the issuance

of a writ . . . ."). He has also submitted no evidence that he was incompetent or

insane. On state habeas review, defense counsel responded to this claim by

stating: "There was never any issue regarding his sanity or competency. I am fully

versed in those issues and there was nothing to raise in that regard nor was there any need to seek a determination of his sanity or competency." (*Id.*)  Further, under Texas law, evidence of Petitioner's intoxication from methamphetamines was not a defense to the offense, and could only be considered on punishment. *See* Tex. Penal Code Ann. § 804. Petitioner has failed to establish that he received ineffective assistance of counsel.

### 3.    Appellate Counsel

Petitioner further claims appellate counsel was ineffective because counsel failed to raise any of his ineffective assistance of trial counsel claims. As discussed above, Petitioner's trial counsel claims are without merit. Appellate counsel was not required to raise meritless arguments. *See United States v. Gibson*, 55 F.3d 173, 179 (5th Cir. 1995). This claim should be denied

### 4.    Summary

Petitioner is lawfully restrained because he has failed to prove that he has been denied a constitutionally protected interest. Accordingly, the state courts' decision to deny relief is not contrary to or does not involve an unreasonable application of clearly established federal law and is not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

eron

IV.

Because Petitioner failed to make a substantial showing of the denial of a federal right, the Court should DENY with prejudice his petition for writ of habeas corpus under 28 U.S.C. § 2254.

Signed July 9, 2018.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

13